O

# United States District Court
# Central District of California

| | |
|---|---|
| IT'S MY SEAT, INC. et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>HARTFORD CAPITAL LLC, et al.,<br><br>　　　　　　Defendants. | Case № 2:20-cv-06378-ODW (AFMx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [12]** |

## I.　　INTRODUCTION

Plaintiffs It's My Seat, Inc. and Vahe Shahinian brought this action against Defendants Hartford Capital LLC; Bryan Stein aka Boris Shteyngart; Craig Leszczak aka Craig Walters; Kevin Woodley; EIN CAP, Inc.; Russell Naftali; and Gene Slavin (collectively, "Defendants"), in the Superior Court of the State of California, Los Angeles County.  (*See* Notice of Removal ("NOR") ¶ 1, Ex. 1 ("Compl."), ECF No. 1.)  Defendants Stein, Walters, and Hartford Capital removed the action to this Court and moved to dismiss Plaintiffs' Complaint for lack of personal jurisdiction.[1]  (Mot. to Dismiss ("Motion" or "Mot."), ECF No. 12.)  For the reasons discussed below, the Court **DENIES** the Motion.[2]

---

[1] Stein is the only remaining Defendant.  (*See* Order Dismissing Defs., ECF No. 23.)

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND[3]

Vahe Shahinian is the owner of It's My Seat, Inc., a ticketing vendor and concert promoter operating and incorporated in California. (Compl. ¶¶ 1–2.) Hartford is a New York-based lender in the Merchant Cash Advance ("MCA") industry. (Decl. of Vahe Shahinian ("Shahinian Decl.") ¶ 3, ECF No. 18-1; Decl. of Stas Leszczak ¶ 2, ECF No. 12.) Walters and Stein are New York residents with offices in New York, and are representatives of Hartford. (Shahinian Decl. ¶ 3; Decl. of Boris Shteyngart aka Bryan Stein ("Stein Decl.") ¶¶ 3, 5, ECF No. 12; Decl. of Craig Leszczak aka Craig Walters ¶¶ 3, 5, ECF No. 12; Compl. ¶¶ 25–26.)

In January 2019, It's My Seat, Inc. was in the market for a low rate business loan when Walters contacted Plaintiffs and emailed a Hartford loan application. (Compl. ¶¶ 23, 25.) On January 8, 2019, Stein contacted Plaintiffs on behalf of Hartford and promised them a $750,000 line of credit ("Term Loan"), but only if Plaintiffs first took a "Bridge Loan" of $250,000 for thirty days (the "Agreement"). (Compl. ¶ 26; Shahinian Decl. ¶ 3.) Stein informed Plaintiffs that the Bridge Loan would be in the form of a MCA to be funded by Defendant EIN CAP, with an interest rate of 15% monthly. (Compl. ¶ 26.) Stein explained that Defendants would transition the Bridge Loan to a Term Loan with an annual rate of 8.89% after the first thirty days, so Plaintiffs would not have to pay the Bridge Loan to term at the higher interest rate. (*Id.*) Under the Agreement, Plaintiff had to make uninterrupted daily payments of $3,600 on the Bridge Loan and could not take any other loans for thirty days. (*Id.*) Stein sent Plaintiffs the Bridge Loan documents, which Plaintiffs signed, notarized, and sent to EIN CAP, per Stein's direction. (*Id.* ¶ 27; Shahinian Decl. ¶ 4.)

The next day, Plaintiffs asked Stein what would happen if the Bridge Loan did not transition to the Term Loan after thirty days as promised. (Compl. ¶ 28.) Stein reassured Plaintiffs that they should "believe in the 'sincerity in his voice,'" that there

---

[3] Uncontroverted allegations in the complaint are taken as true, and any conflicts in the facts or statements contained in affidavits are resolved in Plaintiffs' favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

was nothing to worry about, and Stein and the other Defendants would handle the transition. (*Id.*) Stein requested that Plaintiffs not mention the transition to EIN CAP because the "paper shuffler at EIN" had "no idea about the back-end plans of EIN and Hartford." (*Id.* ¶ 29.) Also, when Plaintiffs received the Bridge Loan on January 10, 2019, $22,000 had been deducted in unexpected "funding fees," but Stein promised Plaintiffs he would return the $22,000 as a credit in the transition. (*Id.* ¶ 30.)

On February 8, 2019, as the thirty-day period was closing, Plaintiffs contacted Stein to ensure all was in order for the transition. (*Id.* ¶ 34.) The thirtieth day came and went with no word from Stein or any other Defendant. (*Id.* ¶ 35.) On February 12, 2019, Plaintiffs again contacted Stein, requesting the status of the transition from the Bridge Loan to the Term Loan. (*Id.*) Stein replied that it was "being worked on." (*Id.*) Throughout the following month, Stein "reassure[d]" Plaintiffs numerous times that the transition to the Term Loan was coming, with "string-along statements" such as: "I expect an update soon . . . ."; "Only update . . . was 'wait for the link' which is positive."; "No issue."; "They are delayed. The file is not declined. . . . I will be in touch with an update . . . ."; "I am doing everything I can to get this pushed through." (*Id.*)

Due to the delay in the transition, Plaintiffs continued making the daily payment of $3,600 for seventy days, forty days longer than originally agreed. (*Id.* ¶ 36.) Consequently, Plaintiffs faced serious financial jeopardy and were forced to obtain two emergency loans from third-parties. (*Id.* ¶ 38.) Defendants then claimed Plaintiffs' third-party loans violated the Agreement and, on that basis, refused to provide the Term Loan. (*Id.*)

On October 28, 2019, Plaintiffs filed a Complaint against the eight named Defendants in the Superior Court of the State of California, Los Angeles County, asserting seven causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) fraud; (5) intentional misrepresentation; (6) negligent misrepresentation; and (7) violation of

1  California Legal Remedies Act. (*See* Compl. ¶¶ 42–95.) On July 17, 2020, three
2  Defendants—Stein, Walters, and Hartford—removed the action to this Court. (NOR.)
3  As of the removal, only Stein had been served. (NOR ¶ 2; Decl. of Stella Park ¶¶ 2–3,
4  ECF No. 12.)

5  On October 19, 2020, Defendants Stein, Walters, and Hartford moved to
6  dismiss for lack of personal jurisdiction. (*See generally* Mot.) The Motion is fully
7  briefed. (*See* Opp'n, ECF No. 18; Reply, ECF No. 19.) On November 30, 2020, after
8  granting Plaintiffs several extensions of time to serve Defendants, the Court dismissed
9  all Defendants other than Stein because Plaintiffs failed to serve them in a timely
10 manner. (Order Dismissing Defs. 2.) Thus, Stein is the only remaining moving
11 Defendant.

### III.     LEGAL STANDARD

Personal jurisdiction is a question of law, with the "burden of proof . . . on the plaintiff to show that jurisdiction is appropriate." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). If a motion to dismiss for lack of personal jurisdiction is based on written pleadings, as here, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Uncontroverted allegations in the complaint are taken as true and any conflicts in the facts or statements contained in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800.

For a federal court sitting in diversity to exercise personal jurisdiction over a nonresident defendant: (1) the state jurisdictional statute must confer personal jurisdiction over the nonresident defendant, and (2) the exercise of jurisdiction must comport with federal constitutional due process. *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986). California's long-arm jurisdictional statute is coextensive with federal due process requirements, making the state and federal limits coextensive. *Schwarzenegger*, 374 F.3d at 800-01;

*Data Disc*, 557 F.2d at 1286. Thus, the question becomes whether the exercise of personal jurisdiction comports with due process. *Haisten*, 784 F.2d at 1396.

### IV. DISCUSSION

Stein moves to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. (Mot. 8.) For personal jurisdiction over an out-of-state defendant like Stein to comport with due process, the defendant must have "such 'contacts' with the forum State that 'the maintenance of the suit' is reasonable . . . and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, No. 19-368, --- S. Ct. ----, 2021 WL 1132515, at *4 (U.S. Mar. 25, 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). California courts may exercise jurisdiction "over a nonresident defendant if he has enough continuous contacts with California to subject him to the court's *general* jurisdiction or if the specific cause of action arises out of a defendant's more limited contacts with the state so that California may exercise *limited* or *specific* jurisdiction over him." *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). Plaintiffs argue Stein is subject to both general and specific jurisdiction. (*See* Opp'n 7.)

### A. General Jurisdiction

For general personal jurisdiction to exist over a nonresident defendant, a defendant's contact with a forum state must be so pervasive as to render them "'essentially at home' in the State." *Ford Motor Co.*, 2021 WL 1132515, at *4 (quoting *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiffs' only argument is that other Defendants have described Stein as a "local" California defendant, prior to removal. (Opp'n 7.) This conclusory assertion is far from sufficient to establish that Stein is "essentially at home" in California. *See Goodyear*, 564 U.S. at 919. Plaintiffs therefore fail to establish a prima facie case of general jurisdiction.

## B. Specific Jurisdiction

The question of personal jurisdiction, then, turns on whether Stein's relevant contacts with Plaintiffs enable this Court to exercise *specific* personal jurisdiction in this case. Where a defendant's contacts are "not so pervasive as to subject him to general jurisdiction," the Ninth Circuit applies a three-part specific jurisdiction test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Data Disc*, 557 F.2d at 1287. The plaintiff bears the burden of making a prima facie showing of the first two prongs, but "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### 1. *Purposeful Availment*

As to the first prong, the exact form of the inquiry depends on nature of the claim. For claims sounding in contract, as in Plaintiffs' first claim for breach of contract, the Ninth Circuit applies a "purposeful availment" analysis that asks whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).[4] To have purposefully availed himself of the privilege of doing business in the forum, a

---

[4] As discussed below, the Court finds it may exercise personal jurisdiction over Stein related to the contract claim. Thus, the Court need not reach personal jurisdiction related to Plaintiffs further claims because, even where personal jurisdiction exists over one claim but not others, a district court may exercise pendent personal jurisdiction over remaining claims that arise out of the same "common nucleus of operative facts." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). As all of Plaintiffs' claims arise from the same common nucleus of operative facts concerning the Bridge Loan and Term Loan, pendent personal jurisdiction would be appropriate.

defendant must "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)).

In evaluating the "jurisdictional significance of a defendant's contract or other business in the forum," the Ninth Circuit applies a "practical and pragmatic" approach that is neither rigid nor formalistic. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citing *Burger King*, 471 U.S. at 478). "[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Id.* at 1017. Rather, there must be "actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475. Courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479; *Hall v. LaRonde*, 56 Cal. App. 4th 1342, 1347 (1997). The origin of the contract at issue is also relevant, as solicitation of business within the forum will likely amount to purposeful availment. *Sinatra*, 854 F.2d at 1195.

Here, Stein asserts he never traveled to California for business dealings with Plaintiffs and contends no facts support Plaintiffs' allegations of his California contacts. (Mot. 10.) Yet, "physical presence in the forum is not a prerequisite to jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Rather, "physical entry into the State—either by the defendant in person or through an agent, goods, *mail, or some other means*—is certainly a relevant contact." *Id.* (emphasis added). Moreover, as society and technology evolve, "there is no reason why the requisite minimum contacts cannot be electronic." *Hall*, 56 Cal. App. 4th at 1347. Thus, Stein's lack of travel to California is not determinative.

Plaintiffs allege numerous phone calls, text messages, electronic and regular mail, and other correspondence between Stein and Shahinian on multiple dates. (*See* Shahinian Decl. ¶ 6; *see also, e.g.*, Compl. ¶¶ 26–30, 33–35.) Stein confirms that he initiated the conversation on January 8, 2019, and continued communicating with

Plaintiffs regarding the Agreement through March 2019. (Stein Decl. ¶¶ 9–13, 15.) As alleged, these conversations included Stein's solicitation and promises, the negotiation and formation of the Agreement underlying the Bridge and Term Loans, and the parties' actual course of dealing over the relevant time period. Moreover, the Agreement clearly contemplated future obligations, though relatively short term, as Stein repeatedly reassured Plaintiffs that he would handle the eventual transition of the Bridge Loan to the Term Loan. These affirmative acts by Stein in conducting business with Plaintiffs in California are sufficient to establish his purposeful availment of the forum.

Although Stein correctly argues that his contacts with California may not be judged by the activities of Hartford or the other Defendants, his purported status as independent contractor does not somehow insulate him from personal jurisdiction here. (*See* Reply 6.) The Court evaluates Stein's contacts with California individually, *Rush v. Savchuk*, 444 U.S. 320, 332 (1980), and in this case, Stein is arguably the primary participant in the alleged wrongdoing directed at a California citizen and business, (*see* Compl. ¶¶ 26–35).

Finally, Stein argues the entirety of his involvement was merely "one random call," and not sufficient to subject him to personal jurisdiction here. (Reply 10.) But this is plainly not true, particularly in light of the entire course of dealing between the parties. Plaintiffs' allegations and the declarations of both parties show that Stein was substantially involved in the transactions. (*See* Compl. ¶¶ 26–38; Stein Decl. ¶¶ 9–14; Shahinian Decl. ¶¶ 3–7.) It was Stein who offered Plaintiffs the Term Loan conditioned on the Bridge Loan; Stein who explained the obligations governing Plaintiffs' receipt of the Term Loan; and Stein who repeatedly promised the eventual transition of Bridge Loan to Term Loan. (Compl. ¶¶ 26–28; Stein Decl. ¶¶ 9–13.) For months, Stein assured Plaintiffs that they could trust in the "sincerity in his voice," that the Term Loan was coming and merely "delayed," and there was "[n]o issue." (Compl. ¶ 35; Stein Decl. ¶ 13.) Ultimately, Stein is responsible for both the "prior

negotiations and contemplated future consequences" of the Agreement, which supports the exercise of specific personal jurisdiction. *Burger King*, 471 U.S. at 479.

In reaching out to Plaintiffs in California on numerous occasions to transact business with a California company, Stein has "manifestly availed himself of the privilege of conducting business" in California and purposely derived a benefit from those interstate activities. *See Burger King*, 471 U.S. at 476; *Hall*, 56 Cal. App. 4th at 1347. It is thus "fair to require that he account in California for the consequences that arise from such activities." *See Hall*, 56 Cal. App. 4th at 1347. The purposeful availment prong is met.

*2. The Claims' Relation to Defendant's Forum Activities*

The next requirement is that the claims at issue "'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 2021 WL 1132515, at *4; *Data Disc*, 557 F.2d at 1287. Even a "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (alterations and internal quotation marks omitted).

Plaintiffs' breach of contract claim against Stein arises directly out of his contacts with the forum. Stein admits he called Plaintiffs in California to solicit and conduct business in the form of the Bridge and Term Loan deal, and the contract at issue stems directly from that contact. (Stein Decl. ¶ 9.) Stein's contacts with the forum state are therefore integral and essential parts of Plaintiffs' claim. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (finding defendants' contacts with the forum state integral and essential to the scheme giving rise to plaintiff's claims). Accordingly, Plaintiffs' claim arises out of Stein's forum-related activities in soliciting their business in California, and the second prong is satisfied.

### 3. Reasonableness

As It's My Seat has made a prima facie showing of the first two prongs, the burden shifts to Stein to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King*, 471 U.S. at 476–78). It is not enough that a defendant show another forum is "more reasonable than California." *Sher*, 911 F.2d at 1365. Rather, a defendant "must show a due process violation; it must show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.'" *Id.* (quoting *Burger King*, 471 U.S. at 478). Courts in the Ninth Circuit evaluate seven factors in making this reasonableness determination:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co.*, 303 F.3d at 1114. As no single factor is dispositive, the Court must balance them. *Roth*, 942 F.2d at 623.

The main thrust of Stein's unreasonableness argument is that he was involved in only "one random transaction," in which he played a "small and indirect part," and requiring him to travel to California to litigate would cause him "a great financial burden." (Reply 10.) Stein fails to set forth a compelling case that exercise of jurisdiction would be unreasonable in this case.

**First**, the Court has already concluded that Stein purposefully injected himself into California to conduct business with Plaintiffs. He took affirmative steps to solicit business in California and spent months nurturing that California business relationship with Plaintiffs. This factor thus weighs in favor of Plaintiffs. **Second**, while litigation

in California may be inherently burdensome on an out-of-state defendant, modern "advances in transportation and telecommunications and the increasing interstate practice of law" have significantly reduced any burden. *CollegeSource, Inc.*, 653 F.3d at 1080.  Moreover, "[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth*, 942 F.2d at 623.  Therefore, any burden on Stein to litigate in the forum state is not so great as to sway this factor in his favor

**Third**, the "conflict of sovereignty" factor is not particularly dispositive in the reasonableness analysis.  *See Sinatra*, 854 F.2d at 1199.  A "minimum-contacts analysis presupposes that two or more States may be interested in the outcome of a dispute, and . . . potentially conflicting 'fundamental substantive social policies' can usually be accommodated through choice-of-law rules rather than through outright preclusion of jurisdiction in one forum." *Burger King*, 471 U.S. at 484 n.26 (citation omitted).  Additionally, this factor is not a very significant in cases, such as this one, which involve only U.S. citizens.  *Brand v. Menlove Dodge*, 796 F.2d 1070, 1076 n.5 (9th Cir. 1986); *see Sher*, 911 F.2d at 1365 (discussing that where two states have an interest in the litigation, it can be difficult to find either one more reasonable).  This factor therefore weighs neutral.  **Fourth**, California "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted).  As Plaintiffs are California citizens and It's My Seat's principal place of business is in California, this factor favors Plaintiffs.  *See Dole Food Co.*, 303 F.3d at 1116 (finding this factor favored plaintiff where plaintiff's principal place of business was in California).

**Fifth**, generally, "[t]he site where the injury occurred and where evidence is located usually will be the most efficient forum." *Pac. Atl. Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1331 (9th Cir. 1985).  But this factor is "no longer weighed heavily given the modern advances in communication and transportation."

*Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Here, the injury occurred in California, where It's My Seat and Shahinian were harmed by Stein's alleged breach of the Agreement. On the other hand, Plaintiffs are in California and Stein is in New York, so potential evidence is likely located in both fora. Therefore, this factor weighs only slightly in favor of Plaintiffs. **Sixth**, Plaintiffs have a substantial interest in seeking relief in California, which serves as It's My Seat's principal place of business and Shahinian's residence. (Compl. ¶¶ 1–2.) This factor favors Plaintiffs. Finally, **seventh**, "[w]hether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *CollegeSource*, 653 F.3d at 1080. Stein has not made that showing.

Weighing the factors, the Court finds that Stein has failed to make a compelling case that the exercise of jurisdiction in California would not be reasonable.

4.  *Summary*

Stein purposefully availed himself of the privilege of doing business in the forum; Plaintiffs' claims arise from Stein's contacts with the forum; and Stein has failed to make a compelling case that the exercise of personal jurisdiction would be unreasonable. Accordingly, the exercise of personal jurisdiction over Stein is appropriate, and the Court **DENIES** Stein's Motion.

## V.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Stein's Motion to Dismiss. (ECF No. 12.)

**IT IS SO ORDERED.**

March 30, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**